JUDGE SAND

09 CV 833

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

Boilermaker-Blacksmith National Pension Trust, *on Behalf of Themselves and All Others Similarly Situated,*

Plaintiffs,

*v.*

Wells Fargo Mortgage-Backed Securities 2006-AR1 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR2 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR3 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR4 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR5 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR6 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR7 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR8 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR10 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR11 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR12 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR13 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR14 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR15 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR16 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR17 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR18 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR19 Trust, Wells Fargo Mortgage-Backed Securities 2006-1 Trust, Wells Fargo Mortgage-Backed Securities 2006-2 Trust, Wells Fargo Mortgage-Backed Securities 2006-3 Trust, Wells Fargo Mortgage-Backed Securities 2006-4 Trust, Wells Fargo Mortgage-Backed Securities 2006-5 Trust, Wells Fargo Mortgage-Backed Securities 2006-6 Trust, Wells Fargo Mortgage-Backed Securities 2006-7 Trust, Wells Fargo Mortgage-Backed Securities 2006-8 Trust, Wells Fargo Mortgage-Backed Securities 2006-9 Trust, Wells Fargo Mortgage-

---

**Docket No.:**

**CLASS ACTION**

**COMPLAINT FOR VIOLATION
OF SECTIONS
11, 12 AND 15 OF THE
SECURITIES ACT OF 1933**

**ECF CASE**



RECEIVED
JAN 29 2009
U.S.D.C. S.D.N.Y.
CASHIERS

1

Backed Securities 2006-10 Trust, Wells Fargo
Mortgage-Backed Securities 2006-11 Trust, Wells
Fargo Mortgage-Backed Securities 2006-12 Trust,
Wells Fargo Mortgage-Backed Securities 2006-13
Trust, Wells Fargo Mortgage-Backed Securities
2006-14 Trust, Wells Fargo Mortgage-Backed
Securities 2006-15 Trust, Wells Fargo Mortgage-
Backed Securities 2006-16 Trust, Wells Fargo
Mortgage-Backed Securities 2006-17 Trust, U.S.
Bank National Association, HSBC Bank USA,
N.A., Wells Fargo Asset Securities Corporation,
Wells Fargo Bank, N.A., David Moskowitz,
Franklin Codel, Thomas Neary, Douglas K.
Johnson, Goldman, Sachs & Co., Morgan Stanley
& Co., Inc., JPMorgan Chase, Inc., *as successor-
in-interest to* Bear, Stearns & Co., Inc., HSBC
Securities (USA), Inc., Credit Suisse Securities
(USA), LLC, Deutsche Bank Securities, Inc.,
UBS Securities, LLC, Citigroup Global Markets,
Inc., Greenwich Capital Markets, Inc., Barclays
Capital, Inc., Banc of America Securities, LLC,
Wells Fargo Brokerage Services, LLC, Bank of
America Corporation *as successor-in-interest to*
Merrill Lynch, Pierce, Fenner & Smith, Inc.,
Countrywide Securities Corporation, Bank of
America Corporation *as successor-in-interest to*
Countrywide Securities Corporation, Moody's
Investor Services, Inc., The McGraw-Hill
Companies and Fitch Ratings, Inc.

                    Defendants.

Plaintiff, The Boilermaker-Blacksmith National Pension Trust, alleges the following

based upon the investigation of counsel, Schoengold Sporn Laitman & Lometti, P.C., which

included a review of United States Securities and Exchange Commission ("SEC") filings by

Wells Fargo Asset Securities Corporation ("WFASC") and Wells Fargo Mortgage-Backed

Securities 2006-AR1 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR2 Trust, Wells

Fargo Mortgage-Backed Securities 2006-AR3 Trust, Wells Fargo Mortgage-Backed Securities

2006-AR4 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR5 Trust, Wells Fargo

Mortgage-Backed Securities 2006-AR6 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR7 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR8 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR10 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR11 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR12 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR13 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR14 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR15 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR16 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR17 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR18 Trust, Wells Fargo Mortgage-Backed Securities 2006-AR19 Trust, Wells Fargo Mortgage-Backed Securities 2006-1 Trust, Wells Fargo Mortgage-Backed Securities 2006-2 Trust, Wells Fargo Mortgage-Backed Securities 2006-3 Trust, Wells Fargo Mortgage-Backed Securities 2006-4 Trust, Wells Fargo Mortgage-Backed Securities 2006-5 Trust, Wells Fargo Mortgage-Backed Securities 2006-6 Trust, Wells Fargo Mortgage-Backed Securities 2006-7 Trust, Wells Fargo Mortgage-Backed Securities 2006-8 Trust, Wells Fargo Mortgage-Backed Securities 2006-9 Trust, Wells Fargo Mortgage-Backed Securities 2006-10 Trust, Wells Fargo Mortgage-Backed Securities 2006-11 Trust, Wells Fargo Mortgage-Backed Securities 2006-12 Trust, Wells Fargo Mortgage-Backed Securities 2006-13 Trust, Wells Fargo Mortgage-Backed Securities 2006-14 Trust, Wells Fargo Mortgage-Backed Securities 2006-15 Trust, Wells Fargo Mortgage-Backed Securities 2006-16 Trust and Wells Fargo Mortgage-Backed Securities 2006-17 Trust (collectively the "Defendant Issuers" or the "WFMBS Trusts"), as well as regulatory filings and reports and advisories about WFASC and the WFMBS Trusts, press releases and other public statements issued by ratings agencies about WFASC and the WFMBS Trusts, and their own internal investigation. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth

herein after reasonable opportunity for discovery. The claims asserted herein do not sound in or arise from allegations of fraud.

## NATURE OF THE ACTION

1.      This is a class action brought by The Boilermaker-Blacksmith National Pension Trust (the "Trust") alleging violations of Sections 11, 12 and 15 of the Securities Act of 1933, 15 U.S.C. § 77a et seq. ("Securities Act"), on behalf of purchasers of WFMBS Pass-Through Certificates, Series 2006-AR1, Series 2006-AR2, Series 2006-AR3, Series 2006-AR4, Series 2006-AR5, Series 2006-AR6, Series 2006-AR7, Series 2006-AR8, Series 2006-AR10, Series 2006-AR11l, Series 2006-AR12, Series 2006-AR13, Series 2006-AR14, Series 2006-AR15, Series 2006-AR16, Series 2006-AR17, Series 2006-AR18, Series 2006-AR19, Series 2006-1, Series 2006-2, Series 2006-3, Series 2006-4, Series 2006-5, Series 2006-6, Series 2006-7, Series 2006-8, Series 2006-9, Series 2006-10, Series 2006-11, Series 2006-12, Series 2006-13, Series 2006-14, Series 2006-15, Series 2006-16 and Series 2006-17 (the "Certificates" or the "WFMBS Certificates") who purchased the Certificates, backed by pools of fully amortizing, one- to four-family, adjustable interest rate, residential first mortgage loans, pursuant to or traceable to the following Offerings:

a.      $841,731,100 Offering of Series 2006-AR1 Certificates on or about February 22, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR1 Trust (the "2006-AR1 Offering");

b.      Offering of Series 2006-AR2 Certificates on or about February 23, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR2 Trust (the "2006-AR2 Offering");

c.     $598,493,100 Offering of Series 2006-AR3 Certificates on or about February 23, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR3 Trust (the "2006-AR3 Offering");

d.     $1,179,771,100 Offering of Series 2006-AR4 Certificates on or about March 20, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR4 Trust (the "2006-AR4 Offering");

e.     $1,190,698,100 Offering of Series 2006-AR5 Certificates on or about March 21, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR5 Trust (the "2006-AR5 Offering");

f.     $1,773,901,100 Offering of Series 2006-AR6 Certificates on or about March 24, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR6 Trust (the "2006-AR6 Offering");

g.     $988,349,100 Offering of Series 2006-AR7 Certificates on or about April 19, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR7 Trust (the "2006-AR7 Offering");

h.     $1,477,478,100 Offering of Series 2006-AR8 Certificates on or about April 21, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR8 Trust (the "2006-AR8 Offering");

i.     $2,918,985,100 Offering of Series 2006-AR10 Certificates on or about June 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR10 Trust (the "2006-AR10 Offering");

j.	$787,498,100 Offering of Series 2006-AR11 Certificates on or about July 25, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR11 Trust (the "2006-AR11 Offering");

k.	$1,439,050,100 Offering of Series 2006-AR12 Certificates on or about August 24, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR12 Trust (the "2006-AR12 Offering");

l.	$777,713,100 Offering of Series 2006-AR13 Certificates on or about August 24, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR13 Trust (the "2006-AR13 Offering");

m.	$1,988,249,100 Offering of Series 2006-AR14 Certificates on or about September 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR14 Trust (the "2006-AR14 Offering");

n.	$397,898,100 Offering of Series 2006-AR15 Certificates on or about September 22, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR15 Trust (the "2006-AR15 Offering");

o.	$496,559,100 Offering of Series 2006-AR16 Certificates on or about September 20, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR16 Trust (the "2006-AR16 Offering");

p.	$690,534,100 Offering of Series 2006-AR17 Certificates on or about September 25, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR17 Trust (the "2006-AR17 Offering");

q.  $1,195,150,100 Offering of Series 2006-AR18 Certificates on or about October 23, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR18 Trust (the "2006-AR18 Offering");

r.  $796,542,900 Offering of Series 2006-AR19 Certificates on or about November 16, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR19 Trust (the "2006-AR19 Offering");

s.  $449,095,756 Offering of Series 2006-1 Certificates on or about February 23, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-1 Trust (the "2006-1 Offering");

t.  $1,402,626,915 Offering of Series 2006-2 Certificates on or about February 24, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-2 Trust (the "2006-2 Offering");

u.  $939,945,204 Offering of Series 2006-3 Certificates on or about February 23, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-3 Trust (the "2006-3 Offering");

v.  $948,521,413 Offering of Series 2006-AR4 Certificates on or about March 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-AR4 Trust (the "2006-AR4 Offering");

w.  $286,087,730 Offering of Series 2006-5 Certificates on or about April 26, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-5 Trust (the "2006-5 Offering");

x.      $1,093,674,591 Offering of Series 2006-6 Certificates on or about April 26, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-6 Trust (the "2006-6 Offering");

y.      $421,290,254 Offering of Series 2006-7 Certificates on or about May 25, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-7 Trust (the "2006-7 Offering");

z.      $1,393,279,582 Offering of Series 2006-8 Certificates on or about June 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-8 Trust (the "2006-8 Offering");

aa.      $1,287,506,224 Offering of Series 2006-9 Certificates on or about July 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-9 Trust (the "2006-9 Offering");

bb.      $821,744,309 Offering of Series 2006-10 Certificates on or about July 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-10 Trust (the "2006-10 Offering");

cc.      $995,131,921 Offering of Series 2006-11 Certificates on or about August 25, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-11 Trust (the "2006-11 Offering");

dd.      $895,867,893 Offering of Series 2006-12 Certificates on or about September 27, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-12 Trust (the "2006-12 Offering");

ee.     $896,001,309 Offering of Series 2006-13 Certificates on or about September 25, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-13 Trust (the "2006-13 Offering");

ff.     $597,306,104 Offering of Series 2006-14 Certificates on or about September 21, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-14 Trust (the "2006-14 Offering");

gg.     $3,233,940,146 Offering of Series 2006-15 Certificates on or about October 26, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-15 Trust (the "2006-15 Offering");

hh.     $1,500,335,664 Offering of Series 2006-16 Certificates on or about October 26, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-16 Trust (the "2006-16 Offering");

ii.     $325,008,681 Offering of Series 2006-17 Certificates on or about October 24, 2006 issued by Defendant Wells Fargo Mortgage-Backed Securities 2006-17 Trust (the "2006-17 Offering");

2.      The Certificates were issued pursuant to a Form S-3 Registration Statement filed with the Securities Exchange Commission on or about July 29, 2005 (SEC File No. 333-127031).  The initial Registration Statement was thereafter amended by the filing of a supplemental Form S-3/A on January 31, 2006 (SEC File No. 333-129159) (the "Registration Statement"), pursuant to which the WFMBS Series 2006-AR1, 2006-AR2, 2006-AR3, 2006-AR4, 2006-AR5, 2006-AR6, 2006-AR7, 2006-AR8, 2006-AR10, 2006-AR11, 2006-AR12, 2006-AR13, 2006-AR14, 2006-AR15, 2006-AR16, 2006-AR17, 2006-AR18, 2006-AR19, 2006-1, 2006-2, 2006-3, 2006-4, 2006-5, 2006-6, 2006-7, 2006-8, 2006-9, 2006-10, 2006-11, 2006-12,

2006-13, 2006-14, 2006-15, 2006-16, 2006-17 Certificates were issued. The Offerings occurred in this venue. The Certificates herein are Mortgage-Backed Pass-Through Certificates ("MPTC") collateralized by mortgages originated by Wells Fargo Bank, ("WFB" or the "Originator"), which, at all relevant times, was a commercial and residential lender. The mortgages and liens on the mortgaged properties constituting the Certificates' collateral were, as set forth in the Registration Statements and Prospectuses, to be the principal source by which Certificate purchasers were to obtain repayment of their investment plus interest. As also set forth in the Registration Statements, the Certificate collateral was purportedly originated by WFB pursuant to specific underwriting procedures and guidelines. The Underwriters of the Offerings varied from Offering to Offering: Defendant Goldman, Sachs & Co. ("GSC") was the Underwriter for the 2006-AR1 and 2006-AR5 Offerings; Defendant Morgan Stanley & Co., Inc. ("MS") was the Underwriter for the 2006-AR3 and 2006-AR13 Offerings; Defendant JPMorgan Chase, Inc. ("JPM"), as *successor-in-interest* to Defendant Bear, Stearns & Co., Inc., ("BSC") was the Underwriter for the 2006-AR4, 2006-AR6 and 2006-12 Offerings; Defendant HSBC Securities (USA), Inc. ("HSBCS") was the Underwriter for the 2006-AR7 and 2006-9 Offerings; Defendant Deutsche Bank Securities, Inc. ("DBS") was the Underwriter for the 2006-AR10, 2006-AR11, 2006-AR15, 2006-AR17 and 2006-AR19 Offerings; Defendant UBS Securities, LLC ("UBS") was the Underwriter for the 2006-AR18, 2006-3, 2006-6, 2006-7, 2006-16 and 2006-17 Offerings; Defendant Citigroup Global Markets, Inc. ("CITI") was the Underwriter for the 2006-AR16, 2006-1, 2006-3, 2006-14 and 2006-15 Offerings; Defendant Credit Suisse Securities (USA), LLC ("CSS") was the Underwriter for the 2006-AR8, 2006-AR12, 2006-1 and 2006-10 Offerings; Defendant Greenwich Capital Markets, Inc. ("RBS") was the Underwriter for the 2006-2, 2006-4, 2006-7 and 2006-11 Offerings; Defendant Barclays Capital, Inc. ("BC") was the

Underwriter for the 2006-5 and 2006-16 Offerings; Defendant Banc of America Securities, LLC ("BAS") was the Underwriter for the 2006-8 and 2006-9 Offerings; Defendant Countrywide Securities Corporation ("CSC") was the Underwriter for the 2006-8 and 2006-13 Offerings;[1] and Defendants GSC, MS, JPM, HSBCS, DBS, UBS, CITI, CSS, RBS, BC, BAS, CSC and BOFA are collectively referred to herein as the "Underwriter Defendants" or the "Underwriters."  The Underwriters were obligated to conduct meaningful due diligence to ensure that the Registration Statements and Prospectuses contained no material misstatements or omissions, including the stated manner in which the mortgages had been originated.  The Underwriters received massive fees for their work in connection with the Offerings.  Based on, *inter alia*, the Underwriters' due diligence and the representations in the Registration Statements and Prospectuses relating to the underwriting of the Certificate collateral, rating agencies such as Moody's Investors Service, Inc. ("Moody's"), Standard & Poor's ("S&P") and Fitch Ratings, Inc. ("Fitch") (collectively, the "Underwriter Ratings Agencies" or "Defendant Underwriter Ratings Agencies" and are included in the term "Underwriter Defendants") assigned the Certificates among the highest ratings applicable to such debt issues. At the time of the Offering, the Certificates were issued at approximately par or $100.00 face value per Certificate.

3.     Following the issuance of the Certificates, disclosures began to emerge revealing WFB routinely disregarded the underwriting guidelines in its mortgage loan origination.  These disclosures were confirmed by substantially higher rates of delinquencies and foreclosures on collateral for such highly-rated debt issues. These disclosures, and the poor performance of the collateral, caused the Rating Agencies to review and revise the ratings assigned to the Certificates due to the fact that the true nature of the collateral had not been properly assessed at

---

[1]     Defendant Bank of America Corporation ("BOFA"), as *successor-in-interest to* Defendant CSC.

## JURISDICTION AND VENUE

4.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.

5.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

6.      Venue is proper in this County pursuant to Section 22 of the Securities Act. Many of the acts and transactions alleged herein, including the preparation and dissemination of many of the material misstatements and omissions contained in the Registration Statement and Prospectuses filed in connection with the Offerings occurred in substantial part in this County. Additionally, the Certificates were actively marketed and sold in this County.  In addition, many of the Defendants maintain offices in this County, none more important than WFASC, the WFMBS Trusts and related Wells Fargo entities, all of which maintain their principal place of business in this County.

## PARTIES

7.      Plaintiff, The Boilermaker-Blacksmith National Pension Trust, is a Taft-Hartley Pension Fund.  The Trust purchased certain of the WFMBS Certificates described previously at

par value on the Offerings. Plaintiff and the Class purchased pursuant to the Registration Statements and Prospectuses which contained material misstatements and omissions of facts necessary to make the facts stated therein not misleading. Plaintiff and the Class relied on the misstatements and omissions in the Prospectuses and have suffered damages pursuant to Sections 11, 12 and 15 of the Securities Act.

8. Defendant Wells Fargo Mortgage-Backed Securities 2006-AR1 Trust was the issuing entity for the 2006-AR1 Offering. Per its filings with the SEC, WFMBS 2006-AR1 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-AR1 Trust is a common-law trust formed under the laws of the State of New York.

9. Defendant Wells Fargo Mortgage-Backed Securities 2006-AR2 Trust was the issuing entity for the 2006-AR2 Offering. Per its filings with the SEC, WFMBS 2006-AR2 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-AR2 Trust is a common-law trust formed under the laws of the State of New York.

10. Defendant Wells Fargo Mortgage-Backed Securities 2006-AR3 Trust was the issuing entity for the 2006-AR3 Offering. Per its filings with the SEC, WFMBS 2006-AR3 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-AR3 Trust is a common-law trust formed under the laws of the State of New York.

11. Defendant Wells Fargo Mortgage-Backed Securities 2006-AR4 Trust was the issuing entity for the 2006-AR4 Offering. Per its filings with the SEC, WFMBS 2006-AR4 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office

location.  Defendant WFMBS Series 2006-AR4 Trust is a common-law trust formed under the laws of the State of New York.

12.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR5 Trust was the issuing entity for the 2006-AR5 Offering.  Per its filings with the SEC, WFMBS 2006-AR5 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR5 Trust is a common-law trust formed under the laws of the State of New York.

13.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR6 Trust was the issuing entity for the 2006-AR6 Offering.  Per its filings with the SEC, WFMBS 2006-AR6 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR6 Trust is a common-law trust formed under the laws of the State of New York.

14.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR7 Trust was the issuing entity for the 2006-AR7 Offering.  Per its filings with the SEC, WFMBS 2006-AR7 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR7 Trust is a common-law trust formed under the laws of the State of New York.

15.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR8 Trust was the issuing entity for the 2006-AR8 Offering.  Per its filings with the SEC, WFMBS 2006-AR8 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR8 Trust is a common-law trust formed under the laws of the State of New York.

16.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR10 Trust was the issuing entity for the 2006-AR10 Offering.  Per its filings with the SEC, WFMBS 2006-AR10 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR10 Trust is a common-law trust formed under the laws of the State of New York.

17.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR11 Trust was the issuing entity for the 2006-AR11 Offering.  Per its filings with the SEC, WFMBS 2006-AR11 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR11 Trust is a common-law trust formed under the laws of the State of New York.

18.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR12 Trust was the issuing entity for the 2006-AR12 Offering.  Per its filings with the SEC, WFMBS 2006-AR12 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR12 Trust is a common-law trust formed under the laws of the State of New York.

19.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR13 Trust was the issuing entity for the 2006-AR13 Offering.  Per its filings with the SEC, WFMBS 2006-AR13 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR13 Trust is a common-law trust formed under the laws of the State of New York.

20.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR14 Trust was the issuing entity for the 2006-AR14 Offering.  Per its filings with the SEC, WFMBS 2006-AR14 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office

location.  Defendant WFMBS Series 2006-AR14 Trust is a common-law trust formed under the laws of the State of New York.

21.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR15 Trust was the issuing entity for the 2006-AR15 Offering.  Per its filings with the SEC, WFMBS 2006-AR15 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR15 Trust is a common-law trust formed under the laws of the State of New York.

22.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR16 Trust was the issuing entity for the 2006-AR16 Offering.  Per its filings with the SEC, WFMBS 2006-AR16 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR16 Trust is a common-law trust formed under the laws of the State of New York.

23.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR17 Trust was the issuing entity for the 2006-AR17 Offering.  Per its filings with the SEC, WFMBS 2006-AR17 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR17 Trust is a common-law trust formed under the laws of the State of New York.

24.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR18 Trust was the issuing entity for the 2006-AR18 Offering.  Per its filings with the SEC, WFMBS 2006-AR18 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR18 Trust is a common-law trust formed under the laws of the State of New York.

25.     Defendant Wells Fargo Mortgage-Backed Securities 2006-AR19 Trust was the issuing entity for the 2006-AR19 Offering.  Per its filings with the SEC, WFMBS 2006-AR19 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.  Defendant WFMBS Series 2006-AR19 Trust is a common-law trust formed under the laws of the State of New York.

26.     Defendant Wells Fargo Mortgage-Backed Securities 2006-1 Trust was the issuing entity for the 2006-1 Offering.  Per its filings with the SEC, WFMBS 2006-1 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-1 Trust is a common-law trust formed under the laws of the State of New York.

27.     Defendant Wells Fargo Mortgage-Backed Securities 2006-2 Trust was the issuing entity for the 2006-2 Offering.  Per its filings with the SEC, WFMBS 2006-2 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-2 Trust is a common-law trust formed under the laws of the State of New York.

28.     Defendant Wells Fargo Mortgage-Backed Securities 2006-3 Trust was the issuing entity for the 2006-3 Offering.  Per its filings with the SEC, WFMBS 2006-3 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-3 Trust is a common-law trust formed under the laws of the State of New York.

29.     Defendant Wells Fargo Mortgage-Backed Securities 2006-4 Trust was the issuing entity for the 2006-4 Offering.  Per its filings with the SEC, WFMBS 2006-4 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.

Defendant WFMBS Series 2006-4 Trust is a common-law trust formed under the laws of the State of New York.

30.     Defendant Wells Fargo Mortgage-Backed Securities 2006-5 Trust was the issuing entity for the 2006-5 Offering.  Per its filings with the SEC, WFMBS 2006-5 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-5 Trust is a common-law trust formed under the laws of the State of New York.

31.     Defendant Wells Fargo Mortgage-Backed Securities 2006-6 Trust was the issuing entity for the 2006-6 Offering.  Per its filings with the SEC, WFMBS 2006-6 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-6 Trust is a common-law trust formed under the laws of the State of New York.

32.     Defendant Wells Fargo Mortgage-Backed Securities 2006-7 Trust was the issuing entity for the 2006-7 Offering.  Per its filings with the SEC, WFMBS 2006-7 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-7 Trust is a common-law trust formed under the laws of the State of New York.

33.     Defendant Wells Fargo Mortgage-Backed Securities 2006-8 Trust was the issuing entity for the 2006-8 Offering.  Per its filings with the SEC, WFMBS 2006-8 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-8 Trust is a common-law trust formed under the laws of the State of New York.

34.     Defendant Wells Fargo Mortgage-Backed Securities 2006-9 Trust was the issuing entity for the 2006-9 Offering.  Per its filings with the SEC, WFMBS 2006-9 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-9 Trust is a common-law trust formed under the laws of the State of New York.

35.     Defendant Wells Fargo Mortgage-Backed Securities 2006-10 Trust was the issuing entity for the 2006-10 Offering.  Per its filings with the SEC, WFMBS 2006-10 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-10 Trust is a common-law trust formed under the laws of the State of New York.

36.     Defendant Wells Fargo Mortgage-Backed Securities 2006-11 Trust was the issuing entity for the 2006-11 Offering.  Per its filings with the SEC, WFMBS 2006-11 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-11 Trust is a common-law trust formed under the laws of the State of New York.

37.     Defendant Wells Fargo Mortgage-Backed Securities 2006-12 Trust was the issuing entity for the 2006-12 Offering.  Per its filings with the SEC, WFMBS 2006-12 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-12 Trust is a common-law trust formed under the laws of the State of New York.

38.     Defendant Wells Fargo Mortgage-Backed Securities 2006-13 Trust was the issuing entity for the 2006-13 Offering.  Per its filings with the SEC, WFMBS 2006-13 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location.

Defendant WFMBS Series 2006-13 Trust is a common-law trust formed under the laws of the State of New York.

39.     Defendant Wells Fargo Mortgage-Backed Securities 2006-14 Trust was the issuing entity for the 2006-14 Offering. Per its filings with the SEC, WFMBS 2006-14 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-14 Trust is a common-law trust formed under the laws of the State of New York.

40.     Defendant Wells Fargo Mortgage-Backed Securities 2006-15 Trust was the issuing entity for the 2006-15 Offering. Per its filings with the SEC, WFMBS 2006-15 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-15 Trust is a common-law trust formed under the laws of the State of New York.

41.     Defendant Wells Fargo Mortgage-Backed Securities 2006-16 Trust was the issuing entity for the 2006-16 Offering. Per its filings with the SEC, WFMBS 2006-16 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-16 Trust is a common-law trust formed under the laws of the State of New York.

42.     Defendant Wells Fargo Mortgage-Backed Securities 2006-17 Trust was the issuing entity for the 2006-17 Offering. Per its filings with the SEC, WFMBS 2006-17 Trust has listed 7430 New Technology Way, Frederick, Maryland 21703 as its principal office location. Defendant WFMBS Series 2006-17 Trust is a common-law trust formed under the laws of the State of New York.

43. Defendant U.S. Bank National Association ("USBNA"), a wholly owned subsidiary of U.S. Bancorp, serves as the Trustee for the 2006-AR1, 2006-AR2, 2006-AR3, 2006-AR4, 2006-AR5, 2006-AR6, 2006-1, 2006-2, 2006-3 and 2006-4 Trusts and maintains its principal offices at 425 Walnut Street, Ste. FRNT, Cincinnati, Ohio 45202-3933.

44. Defendant HSBC Bank USA, N.A. ("HSBCNA") serves as the Trustee for the 2006-AR7, 2006-AR8, 2006-AR10, 2006-AR11, 2006-AR12, 2006-AR13, 2006-AR14, 2006-AR15, 2006-AR16, 2006-AR17, 2006-AR18, 2006-AR19, 2006-5, 2006-6, 2006-7, 2006-8 2006-9, 2006-10, 2006-11, 2006-12, 2006-13, 2006-14, 2006-15, 2006-16 and 2006-17 Trusts and maintains its principal offices at 452 Fifth Avenue, New York, New York 10018. The Bank provides a full range of commercial banking products and services to individuals, corporations, institutions and governments, through its personal financial services, private banking, commercial banking and corporate investment banking and markets segments. The Bank is also an international dealer in derivative instruments and has mortgage banking and brokerage operations. Paul Lawrence is president and chief executive officer of HSBC Bank USA, N.A.

45. Defendant Wells Fargo Asset Securities Corporation ("WFASC") is the Depositor for the Offerings, and the Parent Company of Issuers. WFASC is a direct and wholly owned subsidiary of Wells Fargo Bank, N.A. ("WFBNA"). According to its SEC filings, WFASC maintains its principal offices located at 7430 New Technology Way, Frederick, Maryland 21703.

46. Defendant Wells Fargo Bank, N.A. ("WFBNA") is the parent and at all times the controlling entity of the Depositor, Defendant WFASC. Defendant WFBNA is also the originator of the loans which serve as the underlying assets to the Certificates herein. According

to its SEC filings, WFBNA maintains its principal offices located at 420 Montgomery Street, San Francisco, California 94163.

47.    Defendant David Moskowitz ("Moskowitz") was, during the relevant period, a Director, the President, Chief Executive Officer (Principal Executive Officer), and Secretary of WFASC.  Moskowitz signed the January 31, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered either on behalf of himself or by the authorized Attorney-In-Fact.

48.    Defendant Franklin Codel ("Codel") was, during the relevant period, the Executive Vice President, Chief Financial Officer (Principal Financial Officer) and Chief Accounting Officer of WFASC.  Codel signed the January 31, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered either on behalf of himself or by the authorized Attorney-In-Fact.

49.    Defendant Douglas K. Johnson ("Johnson") was, during the relevant period, a Director of WFASC.  Johnson signed the January 31, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered either on behalf of himself or by the authorized Attorney-In-Fact.

50.    Defendant Thomas Neary ("Neary") was, at all times during the relevant period, a Director and an Executive Vice President of WFASC.  Neary signed the January 31, 2006 WFASC Registration Statement Form S-3/A pursuant to which the various Certificates were offered on behalf of himself and as the authorized Attorney-In-Fact.

51.    Defendant Moskowitz, Codel, Johnson and Neary are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with WFASC, possessed the power and authority to control the contents of WFASC's

52. The Individual Defendants were officers and/or directors of WFASC at the times the Registration Statements and Prospectuses for the Offerings became effective, and with their consent, were identified as such in the Registration Statements. In addition, they each signed one or more of the relevant Registration Statements or authorized them to be signed on their behalf.

53. The Individual Defendants, as officers and/or directors each had a duty to promptly disseminate accurate and truthful information with respect to WFASC and the WFMBS Trusts, and to correct any previously issued statements issued by, or on behalf of WFASC and/or the WFMBS Trusts that had become materially misleading. The Individual Defendants' misrepresentations and omissions in the Prospectuses violated these specific requirements and obligations. The Individual Defendants were signatories to the Registration Statements filed with the SEC and incorporated by reference in the Prospectuses.

54. The Defendants are all liable, jointly and severally, as participants in the issuance of the WFMBS Certificates, including issuing, causing, or making materially misleading statements in the Prospectus and omitting material facts necessary to make the statements contained therein not misleading.

55. Defendant Goldman, Sachs & Co. is an investment banking firm principally located at 85 Broad Street, New York, New York 10004. Defendant GSC served as the Underwriter for the 2006-AR1 and 2006-AR5 Offerings. Defendant GSC was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with

these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. GSC is one of the leading underwriters in mortgage- and asset-backed securities in the United States. According to industry research, Goldman Sachs was one of the top ten sellers of U.S.-collateralized mortgage backed securities between 2005 and 2007, selling over $100 billion of such securities during that time period. Moreover, in the midst of the U.S. mortgage crisis that has plagued the country since early 2007, GSC profited over $4 billion by betting on the collapse of the U.S. subprime market and short selling billions of dollars of mortgage backed securities. GSC, as an essential part of its investment banking business, maintains its principal offices in New York County, but maintains offices throughout the United States.

56. Defendant Morgan Stanley & Co., Inc. ("MS") was the underwriter for the 2006-AR3 and 2006-AR13 Offerings. MS is an international investment banking firm with its worldwide headquarters located at 1585 Broadway, New York, New York 10036. Defendant MS was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. MS is a leading underwriter of a market-maker in residential and commercial mortgage- and asset-backed securities and is active in all areas of secured lending, structured finance and securitized products. MS underwrites and makes markets in the full range of U.S. agency-backed mortgage products, mortgage-backed securities, asset-backed securities and whole loan products.

57.     Defendant Bear, Stearns & Co., Inc. ("BSC") is an investment banking firm formerly located at 383 Madison Avenue, New York, New York 10179.  Defendant BSC was intimately involved in the 2006-AR4, 2006-AR6, 2006-12 and 2006-19 Offerings.  Defendant BS failed to perform the requisite level of due diligence with respect to these Offerings.  The Prospectuses disseminated in connection with these Offerings contained the material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying mortgage loans.  BS was the leading underwriters in mortgage-backed securities in the United States.  BSC was a wholly owned subsidiary of The Bear Stearns Companies, Inc. ("BSCI")

58.     Pursuant to a Merger Agreement effective May 30, 2008, BSCI merged with BSC Merger Corporation, a wholly owned subsidiary of Defendant JPMorgan Chase, Inc. ("JPM"), upon which BSCI became a wholly owned subsidiary of JPM.

59.     Defendant JPM is an investment banking holding company incorporated in Delaware, and principally located at 270 Park Avenue, New York, New York 10017.  Pursuant to the Merger between Bear Stearns Companies Inc. and the wholly owned subsidiary of JPM, Defendant BSC became a non-bank operating wholly owned subsidiary of JPM, BSC's successor-in-interest.

60.     Defendant HSBC Securities USA, Inc. ("HSBCS") was the underwriter for the 2006-AR7 and 2006-9 Offerings.  HSBCS is an investment banking firm with its headquarters located at 452 Fifth Avenue, New York, New York 10018.  HSBCS was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings.  The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the

"Underwriting Practices" employed in originating the underlying subprime mortgage loans. HSBCS is a leading underwriter of a market-maker in residential and commercial mortgage- and asset-backed securities and is active in all areas of secured lending, structured finance and securitized products. HSBCS underwrites and makes markets in the full range of U.S. agency-backed mortgage products, mortgage-backed securities, asset-backed securities and whole loan products.

61. Defendant Deutsche Bank Securities, Inc. ("DBS") is an investment banking firm principally located at 60 Wall Street, New York, New York 10005. Defendant DBS served as the Underwriter for the 2006-AR10, 2006-AR11, 2006-AR15 and 2006-AR17 Offerings. Defendant UBS was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with the Offerings. The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. DBS is one of the leading underwriters in mortgage- and asset-backed securities in the United States.

62. Defendant UBS Securities, LLC ("UBS") is an investment banking firm principally located at 1285 Avenue of the Americas, 19th Floor, New York, New York 10019. Defendant UBS served as the Underwriter for the 2006-AR18, 2006-3, 2006-6, 2006-7, 2006-16 and 2006-17 Offerings. Defendant UBS was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. UBS is one of the leading underwriters

in mortgage- and asset-backed securities in the United States. According to industry research for 2005, UBS was the number five U.S.-collateralized mortgage backed securities loan underwriter and master servicer.

63. Defendant Credit Suisse Securities (USA), LLC ("CSS"), formerly Credit Suisse First Boston, LLC, is an investment banking firm principally located at 11 Madison Avenue, 7th Floor, New York, New York 10010. Defendant CSS served as the Underwriter for the 2006-AR8, 2006-AR12, 2006-1 and 2006-10 Offerings. Defendant CSS failed to perform the requisite level of due diligence in connection with the aforementioned Offerings. The Prospectus disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. CSS is one of the leading underwriters in mortgage- and asset-backed securities in the United States. According to industry research for 2004-2005, Credit Suisse was the number three U.S.-collateralized mortgage backed securities loan contributor and master servicer.

64. Defendant Greenwich Capital Markets, Inc. d/b/a RBS Greenwich Capital, Inc. ("RBS") is an investment banking firm principally located at 600 Steamboat Road, Greenwich Connecticut 06830. Defendant RBS served as the Underwriter for the 2006-2, 2006-4, 2006-7 and 2006-11 Offerings. Defendant RBS was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with the Offerings. The Prospectus disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. RBS is one of the leading underwriters

in mortgage- and asset-backed securities in the United States. Since 1987, RBS has helped mortgage lenders issue more than $400 billion in asset-backed securities.

65.     Defendant Barclays Capital, Inc. ("BC") was the underwriter for the 2006-5 and 2006-16 Offerings. BC is an investment banking firm with its headquarters located at 200 Park Avenue, New York, New York 10166. Defendant BC was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. BC is a leading underwriter of a market-maker in residential and commercial mortgage- and asset-backed securities and is active in all areas of secured lending, structured finance and securitized products. BC underwrites and makes markets in the full range of U.S. agency-backed mortgage products, mortgage-backed securities, asset-backed securities and whole loan products.

66.     Defendant Banc of America Securities, LLC ("BAS") was the underwriter for the 2006-8 and 2006-9 Offerings. BAS is an investment banking firm with its headquarters located at 100 North Tryon Street, 25th Floor, Charlotte, North Carolina 28255. Defendant BAS was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with the 2006-8 and 2006-9 Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. BAS is a leading underwriter of a market-maker in residential and commercial mortgage- and asset-backed securities and is active in all areas of secured lending, structured finance and securitized products. BAS underwrites and makes markets in the full

67. Defendant Countrywide Securities Corporation ("CSC") was the underwriter for the 2006-8 and 2006-13 Offerings. CSC is an investment banking firm with its headquarters located at 4500 Park Granada, Calabasas, California 91302. Defendant CSC was intimately involved in the aforementioned Offerings and failed to perform the requisite level of due diligence in connection with these Offerings. The Prospectuses disseminated in connection with these Offerings contained material misstatements and omissions of material fact relating to the "Underwriting Practices" employed in originating the underlying subprime mortgage loans. CSC is a leading underwriter of a market-maker in residential and commercial mortgage- and asset-backed securities and is active in all areas of secured lending, structured finance and securitized products. CSC underwrites and makes markets in the full range of U.S. agency-backed mortgage products, mortgage-backed securities, asset-backed securities and whole loan products. Defendant CSC is a wholly owned subsidiary of Countrywide Financial Corporation ("CFC"), a wholly owned and operated subsidiary of Bank of America Corporation ("BOFA") since BOFA's purchase and merger with CFC through a subsidiary on July 1, 2008.

68. Defendant BOFA is the successor-in-interest to Defendant CSC, pursuant to BOFA's purchase of CSC in July 2008. BOFA is a bank holding company with its principal executive offices located at Bank of America Corporate Center, 100 N. Tryon Street, Charlotte, North Carolina 28255.

69. With respect to the aforementioned Offerings, the Underwriter Defendants failed to conduct meaningful due diligence, including in connection with the underwriting standards used to originate the Certificate collateral.

70.     Defendant Moody's Investors Services ("Moody's") is a credit rating agency with its principal offices located at 7 World Trade Center at 250 Greenwich Street, New York, New York 10007.    Moody's performs financial research and analysis for commercial and governmental entities and holds a 40 percent share of the world's credit ratings market.  As a condition to the issuance of the Certificates, Moody's purportedly analyzed each Offering to address the likelihood of the receipt of all distributions on the Certificates and assigned appropriate credit ratings for each tranche of the Offerings, which was integral in establishing pricing, interest rates and a market for the Certificates.  Moody's was an "Underwriter" of the Certificates within the meaning of the Securities Act.

71.     Defendant The McGraw-Hill Companies, Inc., through its business division Standard & Poors Ratings Services ("S&P" shall refer to The McGraw-Hill Companies and its business division Standard & Poors' Ratings Services).  Defendant S&P is a credit rating agency with its headquarters located at 55 Water Street, New York, New York 10041.  S&P's performs financial research and analysis for commercial and governmental entities and holds a 40 percent share of the world's credit ratings market.  As a condition to the issuance of the Certificates, S&P purportedly analyzed each Offering to address the likelihood of the receipt of all distributions on the Certificates and assigned appropriate credit ratings for each tranche of the Offerings, which was integral in establishing pricing, interest rates and a market for the Certificates.  S&P was an "Underwriter" of the Certificates within the meaning of the Securities Act.

72.     Defendant Fitch Ratings, Inc. ("Fitch") is a credit rating agency with its principal offices located at One State Street Plaza, New York, New York 10004.  Fitch performs financial research and analysis for commercial and governmental entities and holds a 10 percent share of

the world's credit ratings market. As a condition to the issuance of the Certificates, Fitch purportedly analyzed each Offering to address the likelihood of the receipt of all distributions on the Certificates and assigned appropriate credit ratings for each tranche of the Offerings, which was integral in establishing pricing, interest rates and a market for the Certificates. Fitch was an "Underwriter" of the Certificates within the meaning of the Securities Act.

73. Moody's, S&P and Fitch are collectively referred to herein as the "Underwriter Rating Agencies" and are included in the term "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action as a class action alleging violations of Sections 11, 12 and 15 of the Securities Act, on behalf of a class consisting of all persons who purchased or acquired the Certificates (the "Class") pursuant and/or traceable to the Registration Statements and Prospectuses issued in connection with the Offerings from the effective date through the date of the filing of this action. Excluded from the Class are Defendants, their respective officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

75. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through appropriate discovery, Plaintiff reasonably believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Defendants and/or the Trustee for the Certificates and may be notified of the pendency of this action by mail, the internet or publication using the form of notice similar to that customarily used in securities class actions.

76. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of statutory law complained of herein.

77. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained Schoengold, Sporn, Laitman & Lometti, P.C., counsel competent and experienced in class and securities litigation.

78. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a) whether the provisions of the Securities Act of 1933 were violated by the Defendants as alleged herein;

b) whether the Registration Statements and Prospectuses contained materially untrue statements or omitted statements of material fact; and

c) to what extent the members of the Class have sustained damages pursuant to the statutory measure of damages.

79. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

80.     Currently, the United States is ensnared in a financial crisis arising, in material part, from the greed which drove financial firms to issue billions of dollars of debt securities "collateralized" or securitized with mortgages which only recently have been revealed to have been recklessly underwritten and originated.  The Plaintiff and Class as purchasers of the Certificates have been the victims of just such negligent practices, having purchased the Certificates pursuant to Registration Statements which contained misstatements and omissions concerning the mortgage collateral "securitizing" the Certificates. The WFMBS Trusts and other entities related to the Offering, *i.e.*, the Depositor and Underwriter Defendants, had enormous financial incentive to consummate the Offerings of the Trust Certificates as quickly as possible since they were paid upon completion, a percentage of the total dollar amount of the Offerings sold to investors.  Since the risk of the underlying collateral failing was not assumed by either WFASC, the WFMBS Trusts, the Trustees or the Underwriters, there was also enormous incentive not to conduct full, complete and meaningful due diligence of the statements in the Registration Statements including those relating to the underlying mortgage collateral.

81.     The structure of each Offering was generally identical: WFASC filed a Registration Statement with the SEC on July 29, 2005, followed by a supplemental Form S-3/A Registration Statement filed on January 31, 2006, in connection with the issuance of various series and classes of debt securities which would be governed by said Registration Statements. At some time at or subsequent to each Offering, an "Issuing Entity" Trust was then formed under the laws of the State of New York, *i.e.,* WFMBS 2006-AR1 Trust, for which a Prospectus was filed on behalf of, as the entity responsible for issuing the Certificates at issue herein.

82.     Typically, the loans are originated by the Sponsor, in this case WFBNA, who then disposes of its loans primarily by selling them to third parties and through securitizations. The Sponsor works with the Underwriters and the rating agencies to select the pool of mortgage loans and structure the securitization transaction. The Sponsor or subsidiary thereof also services the mortgage loans. On the closing date of any given Offering, the Sponsor conveys the initial mortgage loans and the related mortgage insurance policies to the Depositor, who will in turn convey the initial mortgage loans and the related mortgage insurance policies to the Trust, by way of the Trustee. The Certificates are backed by the Issuer, and consist of, *inter alia*, the mortgage loans; collections in respect of principal and interest of the mortgage loans received; and the amounts on deposit in the collection account, including the payment account in which amounts are deposited prior to payment to the certificate holders. On the payment date, the certificate holders receive payments from the Trustee based on the particular tranche purchased; typically, available funds for each distribution date will equal the amount received by the trustee and available in the payment account on that distribution date, including interest which differs depending upon the tranche held.

83.     In connection with the WFMBS Offerings, WFASC, the Trusts and the various Underwriter Defendants prepared and disseminated Registration Statements and Prospectuses that contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading that were reasonably relied upon by Plaintiff and the Class to their own detriment.

**The Registration Statement and Prospectuses Contained**
**Material Misstatements and Omissions of Fact**

84.     The Registration Statement represented that all of the loans which made up the pool of residential, subprime mortgages used to support the Certificates were subject to certain

underwriting guidelines which assessed the borrower's creditworthiness, including multi-level reviews of loan applications and appraisals with only "case by case" exceptions to guidelines.

85.     The Registration Statement disclosed that the underlying loans were originated and/or acquired by WFB.  The Registration Statement represented that all the underlying loans were subject to underwriting guidelines set by Wells Fargo Bank and depended largely on factors such as creditworthiness to determine the borrower's "Mortgage Score", inputted into a computerized system in order to determine whether or not the borrower was approved for the loan.

> General Standards.  Wells Fargo Bank's underwriting standards are applied by or on behalf of Wells Fa*rgo Bank to evaluate the applicant's credit standing and ability to repay the loan, as well as the value and adequacy of the mortgaged property as collateral. The underwriting standards that guide the determination represent a balancing of several factors that may affect the ultimate recovery of the loan amount, including, among others, the amount of the loan, the ratio of the loan amount to the property value (i.e., the lower of the appraised value of the mortgaged property and the purchase price), the borrower's means of support and the borrower's credit history. Wells Fargo Bank's guidelines for underwriting may vary according to the nature of the borrower or the type of loan, since differing characteristics may be perceived as presenting different levels of risk. With respect to certain Mortgage Loans, the originators of such loans may have contracted with unaffiliated third parties to perform the underwriting process. Except as described below, the Mortgage Loans will be underwritten by or on behalf of Wells Fargo Bank generally in accordance with the standards and procedures described herein.*
>
> *Wells Fargo Bank supplements the mortgage loan underwriting process with either its own proprietary scoring system or scoring systems developed by third parties such as* Freddie Mac's Loan Prospector, Fannie Mae's Desktop Underwriter or scoring systems developed by private mortgage insurance companies. These scoring systems assist Wells Fargo Bank in the mortgage loan approval process by providing consistent, objective measures of borrower credit and certain loan attributes. Such objective measures are then used to evaluate loan applications and assign each application a "Mortgage Score."
>
> *The portion of the Mortgage Score related to borrower credit history is generally based on computer models developed by a third party.* These models evaluate information available from three major credit reporting bureaus regarding historical patterns of consumer credit behavior in relation to default

experience for similar types of borrower profiles. ***A particular borrower's credit patterns are then considered in order to derive a "FICO Score" which indicates a level of default probability over a two-year period.***

*See* WFASC Form S-3/A Registration Statement, January 31, 2006, p. 32. (Emphasis added).

86.     The statements in the preceding paragraph contained misstatements and material omissions including in connection with the underwriting of the collateral mortgages. As set forth below, a material portion of the underlying collateral for the WFMBS Certificates originated by WFB were not in accordance with the stated credit, appraisal and underwriting standards set forth above, and in fact, were part of WFB's systematic practice of *steering* less creditworthy borrowers, without the necessary loan documentation, into mortgages based on inflated property values.

87.     In addition, the Registration Statement represented that credit review process varied in the levels of scrutiny depending on the borrower, yet all of which stressed homeowner credit-worthiness and ***in most cases, full documentation would be required from the borrower prior to being approved for a loan:***

> ***The Mortgage Score is used to determine the type of underwriting process and which level of underwriter will review the loan file.*** For transactions which are determined to be low-risk transactions, based upon the Mortgage Score and other parameters (including the mortgage loan production source), the lowest underwriting authority is generally required. For moderate and higher risk transactions, higher level underwriters and a full review of the mortgage file are generally required. ***Borrowers who have a satisfactory Mortgage Score (based upon the mortgage loan production source) are generally subject to streamlined credit review (which relies on the scoring process for various elements of the underwriting assessments). Such borrowers may also be eligible for a reduced documentation program and are generally permitted a greater latitude in the application of borrower debt-to-income ratios.***

*See* WFASC Form S-3/A Registration Statement, January 31, 2006, p. 32. (Emphasis added).

88.     The statements in the preceding paragraph contained misstatements and material omissions including in connection with the underwriting of the collateral mortgages. As set forth

below, a material portion of the underlying collateral for the WFMBS Certificates originated by WFB were not in accordance with the stated credit, appraisal and underwriting standards.

89.     Specifically, the Registration Statements set forth WFB's expansion of the *Underwriter Discretion* policy in mid-2005.  The result of WFB's expansion of this policy was a massive increase in the number of sub-prime and alt-A loans underwritten by WFB and its affiliates, furthering WFB's systematic practice of *steering* less creditworthy borrowers, without the necessary loan documentation, into mortgages based on inflated property values.

> Underwriter Discretion. During the second calendar quarter of 2005, W*ells Fargo Bank initiated a program designed to encourage its mortgage loan underwriting staff to prudently, but more aggressively, utilize the underwriting discretion already granted to them under Wells Fargo Bank's underwriting guidelines and policies.* This initiative was viewed by management as necessary and desirable to make prudent loans available to customers where such loans may have been denied in the past because of underwriter hesitancy to maximize the use of their ability to consider compensating factors as permitted by the underwriting guidelines. There can be no assurance that the successful implementation of this initiative will not result in an increase in the incidence of delinquencies and foreclosures, or the severity of losses, among mortgage loans underwritten in accordance with the updated philosophy, as compared to mortgage loans underwritten prior to the commencement of the initiative.

*See* WFASC Form S-3/A Registration Statement, January 31, 2006, p. 36.  (Emphasis added).

90.     The statements in the preceding paragraph contained misstatements and material omissions including that "credit risk" and "quality control" were materially disregarded, whether manually or via modifying the criteria of the automated system, in favor of generating sufficient loan volume to complete the massive Certificate securitizations as alleged herein and as set forth below.

91.     The statements in the preceding paragraphs was incorporated into each of the supplemental Registration Statements and subsequent Offering Prospectuses.

**The Prospectus Stated That The Price of The Bonds Were Tied To Credit Ratings**

92.     The Certificates were rated by the Rating Agencies, which purported to take into account, *inter alia*, the underwriting standards used in originating the underlying mortgages to address the likelihood of the receipt of all distributions on the mortgage loans by the Certificate-holders:

**RATINGS**

It is a condition to the issuance of the Offered Certificates that each such class will have received at least the rating set forth in the table on page S-5 from Moody's Investors Service, Inc. ("Moody's") and Standard & Poor's, a division of The McGraw-Hill Companies, Inc. ("S&P," and together with Moody's, the "Rating Agencies"). A security rating is not a recommendation to buy, sell or hold securities and may be subject to revision or withdrawal at any time by the assigning rating agency. Each security rating should be evaluated independently of any other security rating.

The ratings of Moody's on mortgage pass-through certificates address the likelihood of the receipt by certificateholders of all distributions of principal and interest to which such certificateholders are entitled. Moody's rating opinions address the structural, legal and issuer aspects associated with the certificates, including the nature of the underlying mortgage loans and the credit quality of the credit support provider, if any. Moody's ratings on mortgage pass-through certificates do not represent any assessment of the likelihood that principal prepayments may differ from those originally anticipated and consequently any adverse effect the timing of such prepayments could have on an investor's anticipated yield.

The ratings of S&P on mortgage pass-through certificates address the likelihood of the receipt by certificateholders of timely payments of interest and the ultimate return of principal. S&P's ratings take into consideration the credit quality of the mortgage pool, including any credit support providers, structural and legal aspects associated with the certificates, and the extent to which the payment stream on the mortgage pool is adequate to make payments required under the certificates. S&P's ratings on such certificates do not, however, constitute a statement regarding the frequency of prepayments on the mortgage loans. S&P's ratings do not address the possibility that investors may suffer a lower than anticipated yield as a result of prepayments of the underlying mortgages. In addition, it should be noted that in some structures a default on a mortgage is treated as a prepayment and may have the same effect on yield as a prepayment.

The Depositor has not requested a rating on the Offered Certificates of any Class by any rating agency other than Moody's and S&P, although data with respect to the Mortgage Loans may have been provided to other rating agencies solely for

their informational purposes. There can be no assurance that any rating assigned by any other rating agency to the Offered Certificates will be as high as those assigned by Moody's and S&P. In addition, the Rating Agencies will monitor the initial ratings of the Offered Certificates for so long as they remain outstanding.

*See, i.e.,* WFMBS 2006-AR1 Trust Prospectus Supplement, Feb. 21, 2006, pp. S-54-55.

93.     Each Trust Prospectus set forth the initial ratings of the Certificates.  *See, e.g.,* WFMBS 2006-AR1 Trust Prospectus Supplement, Feb. 21, 2006, p. S-5.

94.     The statements contained the preceding paragraphs – and the initial ratings themselves, as set forth below – contained material misstatements of fact and omitted facts necessary to make the statements not misleading since the Rating Agencies issued the ratings based on an outdated credit rating methodology designed in or about 2002 and because the Rating Agencies presumed that the loans were of high credit quality issued in compliance with the stated underwriting guidelines when, in fact, WFB had systematically disregarded its stated Underwriting Guidelines, as set forth herein.

**Disclosures Relating To WFB's Deficient Lending Practices**

95.     WFB is a wholly owned subsidiary of Wells Fargo & Company ("WFC").  WFB is one of the top U.S. lenders which offers home loans throughout the country through itself and its affiliate underwriters.  WFB operated as one of the nation's largest and most successful mortgage finance companies until its massive exposure to subprime and alt-A mortgage loans placed the company in the midst of the growing crisis in United States mortgage lending in 2007 and 2008.

96.     As the real estate market in this country softened and interest rates increased, WFB, rather than join the frenzy of subprime and alt-A loan underwriting in the early 2000's, opted not to expose itself in that risky lending market, and instead chose to undertake a more financially stable less risky mortgage portfolio.   As WFB saw its profits shrinking and its

market-share slipping away to competitors, WFB abandoned its strategy of less-risky underwriting and sought to make up the ground it had lost. Beginning in 2005, WFB expanded its program of "discretionary underwriting" providing incentives to employees for more aggressive underwriting, resulting in the underwriting of significantly more risky mortgage loans. Throughout 2005-2007, WFB continued pushing ever-increasing sub-prime mortgage loan volume through its system by loosening the Company's underwriting practices and introducing a growing percentage of higher risk mortgage products, including adjustable-rate, interest-only loans and "stated income" loans, where even W-2 wage earners did not have to bother verifying their stated income levels.

97.     Since the Offerings were consummated, WFB's true deficient lending practices have come to light.

**Disclosures of True Nature of Certificate Collateral Lead To Downgrades**

98.     As set forth above, throughout 2007 and 2008 WFB's true underwriting practices became known to the public. During this time, the Company was forced to take significant write-downs due to their massive exposure to the subprime market. In mid-2008, Moody's began its review of Jumbo Mortgage Loans, the largest holder of such was Wells Fargo. In October 2008, Wells Fargo received $25.0 billion subsidy from the Federal Government as part of the Federal Emergency Economic Stabilization Act. As recent as early January 2009, Moody's expressed concerns over Wells Fargo's "asset quality" and future write-downs arising out of Wells Fargo's over $150.0 billion residential mortgage portfolio. Moody's subsequently downgraded the Company's credit rating two notches from Aa1 to Aa3.

99.     Over these concerns, Moody's, S&P and/or Fitch, have revised their ratings on a significant portion of WFMBS Certificate classes due to the massive write-downs and exposure to subprime mortgage markets, and the true nature of the underwriting of WFB's mortgage loans.

For example, the WFMBS Series 2006-AR1 and 2006-AR12 Certificates have been subsequently downgraded by S&P and/or Moody's as follows:

| WFMBS 2006-AR1 | | | | |
|---|---|---|---|---|
| | *Initial Certificate Rating* | | *Revised Certificate Rating* | |
| Class | S&P | Moody's | S&P | Moody's |
| 1A1 | AAA | Aaa | n/c | Baa1 |
| 2A1 | AAA | Aaa | n/c | Aa3 |
| 2A2 | AAA | Aaa | n/c | Aa2 |
| 2A3 | AAA | Aaa | n/c | Aa3 |
| 2A4 | AAA | Aaa | n/c | Aa3 |
| 2A5 | AAA | Aaa | n/c | Aa3 |
| 2A6 | AAA | Aaa | n/c | Baa2 |
| B1 | AA | Aa2 | BBB | B3 |
| B2 | A | A2 | BB | Caa1 |
| B3 | BBB | Baa1 | B- | Caa2 |
| B4 | BB | Ba2 | CCC | Caa3 |
| B5 | B | N/R | CC | N/R |
| B6 | N/R | N/R | N/R | N/R |

| WFMBS 2006-AR12 | | | | |
|---|---|---|---|---|
| | *Initial Certificate Rating* | | *Revised Certificate Rating* | |
| Class | Fitch | Moody's | Fitch | Moody's |
| 1A1 | AAA | Aaa | n/c | A3 |
| 1A2 | AAA | Aa1 | n/c | Ba3 |
| 2A1 | AAA | Aaa | n/c | Aa1 |
| 2A2 | AAA | Aa1 | n/c | A1 |
| 1B1 | AA | N/R | A- | N/R |
| 1B2 | A | N/R | BB- | N/R |
| 1B3 | BBB | N/R | CCC | N/R |
| 2B1 | AA | N/R | AA- | N/R |
| 2B2 | A | N/R | BBB- | N/R |
| 2B3 | BBB | N/R | BB- | N/R |
| 1B4 | BB | N/R | CC | N/R |
| 1B5 | B | N/R | C | N/R |
| 2B4 | BB | N/R | CCC | N/R |
| 2B5 | B | N/R | C | N/R |
| 2B6 | N/R | N/R | N/R | N/R |

101.    As a result of these disclosures and the Rating Agencies' reassessment of the appropriate ratings to be assigned to the Certificates, the value of the Certificates has substantially collapsed.  The Trust's investment in WFMBS Certificates has declined by over *61%* - from *$7,236,151.90* initially to *$2,838,946.30* at the time this action was commenced.

## COUNT I

**Violation of Section 11 of The Securities Act
(Against All Defendants)**

102.    Plaintiff repeats and realleges each and every allegation contained above.

103.    This claim is brought by Plaintiff pursuant to Section 11 of the Securities Act and asserted on behalf of all other members of the Class who purchased or acquired WFMBS Certificates on or traceable to the Offering.

104.    Defendant WFASC is the registrant for the Offerings and filed the Registration Statements and Prospectuses as the issuer of the WFMBS Certificates, as defined in Section 11(a)(1) of the Securities Act.

105.    The Individual Defendants were officers and/or directors of WFASC at the time the Registration Statements filed in connection with the Offerings became effective, and at the time of the issuance of the Prospectuses, and with their consent were identified as such therein. The Individual Defendants are liable for the misstatements and omissions in the Registration Statements alleged herein under Section 11(a)(1) of the Securities Act.

106.    Defendants GSC, MS, JPM, HSBCS, DBS, UBS, CITI, CSS, RBS, BC, BAS, CSC, BOFA, Moody's, S&P and Fitch served as the Underwriters for the Offerings and each qualify as such according to the definition in Section 2(a)(11) of the Securities Act, 15 U.S.C. § 77b(a)(11).  As such, the Underwriter Defendants participated in the solicitation, offering, and

sale of the WFMBS Certificates to the investing public pursuant to the Registration Statements and the Prospectuses.

107.    The Registration Statements and the Prospectuses, at the time they became effective, contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading, as set forth above.  The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statements and the Prospectuses.

108.    The Defendants did not make a reasonable investigation and perform due diligence and did not possess reasonable grounds for believing that the statements contained in the Registration Statements and Prospectuses were true, did not omit any material fact, and were not materially misleading.

109.    Plaintiff and the other Class members did not know, and in the exercise of reasonable diligence, could not have known of the misstatements and omissions contained in the Registration Statements and the Prospectuses.

110.    Plaintiff and other Class members sustained damages as a result of misstatements and omissions in the Registration Statements and the Prospectuses, for which they are entitled to compensation.

111.    Plaintiff brought this action within one year after the discovery of the untrue statements and omissions, and within three years after the Offering.

## COUNT II

### Violation of Section 12(a)(2) of the Securities Act
### (Against All Defendants)

112.    Plaintiff repeats and realleges each and every allegation contained above.

113.    This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, against all Defendants.

114.    By means of the Registration Statements and Prospectuses, and by using means and instruments of transportation and communication in interstate commerce and of the mails, the Defendants through the Offerings sold WFMBS Certificates to Plaintiff and other members of the Class.

115.    Defendants WFASC, the WFMBS Trusts, the Individual Defendants and the Underwriter Defendants each successfully solicited these purchases, motivated at least in part by their own financial interest.  The Defendants each reviewed and participated in drafting the Prospectuses.  Through ensuring the successful completion of the Offerings, the Underwriter Defendants obtained substantial underwriting fees.

116.    The Registration Statements and the Prospectuses, at the time they became effective, contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading, as set forth above.  The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statements and the Prospectuses.

117.    Defendants as "sellers" owed to the purchasers of the WFMBS Certificates, including Plaintiff and other Class members, the duty to perform due diligence and make a reasonable and diligent investigation of the statements contained in the Registration Statements and the Prospectuses, to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants knew of, or in the exercise of reasonable care should have known of, the misstatements and omissions contained in the IPO materials as set forth above.

118.    Plaintiff and other members of the Class purchased or otherwise acquired WFMBS Certificates pursuant to the defective Registration Statements and Prospectuses.

Plaintiff did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the Registration Statements and the Prospectuses.

119. Plaintiff, individually and representatively, hereby offers to tender to Defendants those securities which Plaintiff and other Class members continue to own, on behalf of all members of the Class who continue to own such securities, in return for the consideration paid for those securities together with interest thereon. Class members who have sold their WFMBS Certificates are entitled to rescissory damages.

120. By reason of the conduct alleged herein, these Defendants violated, and/or controlled a person who violated Section 12(a)(2) of the Securities Act. Accordingly, Plaintiff and members of the Class who hold WFMBS Certificates purchased pursuant and/or traceable to the Offerings have the right to rescind and recover the consideration paid for their WFMBS Certificates and hereby elect to rescind and tender their WFMBS Certificates to the Defendants sued herein. Plaintiff and Class members who have sold their WFMBS Certificates are entitled to rescissory damages.

## COUNT III

### Violation of Section 15 of The Securities Act
### (Against Defendants WFBNA, WFASC, the WFMBS Trusts and the Individual Defendants)

121. Plaintiff repeats and realleges each and every allegation contained above.

122. This claim is brought by Plaintiff pursuant to Section 15 of the Securities Act and asserted on behalf of all Class members who purchased or acquired WFMBS Certificates in the Offerings.

123. The Individual Defendants at all relevant times participated in the operation and management of WFASC and the WFMBS Trusts, and conducted and participated, directly and indirectly, in the conduct of WFASC and the WFMBS Trusts' business affairs.

124.    As officers and/or directors of WFASC, the Individual Defendants had a duty to disseminate accurate and truthful information in the Registration Statements and the Prospectuses.

125.    Defendant WFASC is the Parent Corporation and sole owner of the WFMBS Trusts, and at all relevant times participated in the operation and management of the WFMBS Trusts, and conducted and participated, directly and indirectly, in the conduct of the Trusts' business affairs.

126.    Defendant WFBNA is the Parent Corporation and sole owner of the WFASC, and at all relevant times participated in the operation and management of the WFASC, and conducted and participated, directly and indirectly, in the conduct of the WFASC's and the WFMBS Trusts' business affairs.

127.    As set forth above, it is alleged that the Registration Statements and Prospectuses issued in connection with the WFMBS Offerings contained material misstatements of fact, and omitted facts necessary to make the facts contained therein not misleading, in violation of Sections 11 and 12 of the Securities Act.

128.    Because of their positions of control and authority as senior officers and directors of WFASC, the Individual Defendants were able to, and did, control the contents of the Registration Statements and Prospectuses which contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading.  The Individual Defendants were therefore "controlling persons" of WFASC within the meaning of Section 15 of the Securities Act.

129.    Because of its positions of control and authority as the parent company and 100% owner of WFASC, the WFBNA was able to, and did, control the contents of the Registration

Statements and Prospectuses which contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading. WFBNA was therefore a "controlling person" of WFASC within the meaning of Section 15 of the Securities Act.

130. In addition, because of its sole ownership of the WFMBS Trusts and its control and authority as Parent Corporation, Defendant WFASC was able to, and did, control the contents of the Registration Statements and the Prospectuses which contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading. Defendant WFASC was therefore a "controlling person" of the WFASC Trusts within the meaning of Section 15 of the Securities Act.

131. Plaintiff and other Class members purchased WFMBS Certificates issued pursuant to the Offerings. The Offerings was conducted pursuant to the Registration Statements and the Prospectuses.

132. The Registration Statements and Prospectuses, at the time they became effective, contained material misstatements of fact and omitted facts necessary to make the facts stated therein not misleading. The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statements and the Prospectuses.

133. Plaintiff and the Class did not know, and in the exercise of reasonable diligence, could not have known of the misstatements and omissions in the Registration Statements and the Prospectuses.

134. Plaintiff and the Class have sustained damages as a result of the misstatements and omissions of the Registration Statements and the Prospectuses, for which they are entitled to compensation.

135.     Plaintiff brought this action within one year after the discovery of the untrue statements and omissions, and within three years after the Offerings.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:    New York, New York
January 29, 2009

Respectfully submitted,

By:

**SCHOENGOLD SPORN LAITMAN &
LOMETTI , P.C.**
Joel P. Laitman (JL-8177)
Christopher Lometti (CL-9124)
Daniel B. Rehns (DR-5506)
19 Fulton Street, Suite 406
New York, New York 10038
Telephone: (212) 964-0046
Facsimile: (212) 267-8137

*Counsel for Plaintiff and
the Proposed Class*

## CERTIFICATION OF WELLS FARGO
## SECURITIES CLASS ACTION COMPLAINT

I, William T. Creeden, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Secretary of The Boilermaker Blacksmith National Pension Trust (the "Trust").

2. I have reviewed the complaint filed in this case (the "Complaint"), and authorize the filing thereof.

3. The Trust is willing to serve as a representative party on behalf of the Class (as defined in the Complaint), including providing testimony at deposition and trial, if necessary.

4. During the Class Period (as defined in the Complaint), the Trust purchased and/or sold the security that is the subject of the Complaint as set forth on the attached.

5. The Trust did not engage in the foregoing transactions at the direction of counsel or in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

6. During the three-year period preceding the date of my signing this Certification, the Trust has not served nor sought to serve as a representative party on behalf of a class in any private action arising under the Securities Act or the Exchange Act .

7. The Trust will not accept any payment for serving as a representative party on behalf of the Class beyond its pro rata share of any possible recovery except for an award, as ordered by the court, for reasonable costs and expenses directly relating to their representation of the Class.

Signed under the penalties of perjury, this 28th day of January 2009.

William T. Creeden, on behalf of The Boilermaker Blacksmith National Pension Trust

# SCHEDULE A

| DATE | PURCHASED | PRICE PER UNIT |
|------|-----------|----------------|
| 2/7/2006 | 1,360,000-- Wells Fargo Mortgage-Backed Securities Trust, Series 2006-AR1, Due 02/01/36 (Cusip: 94983JAG7) | $.9840 |
| 9/8/2006 | 4,816,000-- Wells Fargo Mortgage-Backed Securities Trust, Series 2006-AR17, Due 10/25/36 (Cusip: 94984LAA4) | $.9920 |
| 10/23/2006 | 2,420,160-- Wells Fargo Mortgage-Backed Securities Trust, Series 2006-AR10, Due 07/25/36 (Cusip: 94983YAQ2) | $.9950 |
| 1/11/2007 | 4,270,985-- Wells Fargo Mortgage-Backed Securities Trust, Series 2006-AR12, Due 09/25/36 (Cusip: 94984GAA5) | $.9925 |